# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-281


## SUCCESSION OF GLADYS KNOTT HEBERT


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 13304
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**Karl W. Bengtson**
**Bengtson Law Firm, LLC**
**P. O. Box 51147**
**Lafayette, LA 70505-1147**
**Telephone: (337) 291-9119**
**COUNSEL FOR:**
    **Appellants - Willa Dean Huval and Kathleen Stelly**

**Robert E. Fruge**
**P. O. Box 375**
**Grand Couteau, LA 70541**
**Telephone: (337) 232-5300**
**COUNSEL FOR:**
    **Apellee - David Shawn Hebert**

**THIBODEAUX, Chief Judge.**

The appellants, Willa Dean Hebert Huval and Kathleen Stelly, are the daughter and granddaughter of the decedent, Gladys Knott Hebert. They appeal the trial court's judgment finding a valid will in favor of Mrs. Hebert's grandson, David Shawn Hebert. We affirm the judgment of the trial court.

## I.

## ISSUES

We must decide whether the trial court erred in finding the will of Gladys Knott Hebert a valid will and in replacing Kathleen Stelly with David Shawn Hebert as the administrator of the estate of the decedent.

## II.

## FACTS AND PROCEDURAL HISTORY

Gladys Knott Hebert and Wilfred Hebert had two children, Willa Dean Hebert Huval (Willa) and David W. Hebert (David). Two grandchildren were born. Willa had a daughter, Kathleen Stelly (Kathleen); and David had a son, David Shawn Hebert (Shawn). A great grandson was born when Shawn also had a son, Shayd Hunter Hebert (Shayd).

On March 24, 1999, Gladys Knott Hebert (Mrs. Hebert) executed a two-page, typed will bequeathing two lots of residential real estate, one to her grandson Shawn, and the other to her great grandson Shayd. The will disposed of no other property. On page two, the will contains Mrs. Hebert's undisputed signature and the signatures of two witnesses, Mrs. Hebert's children, Willa and David. The will was also signed and notarized by Mr. August Dupuis.

Mrs. Hebert died in 2003. At the time of her death, Mrs. Hebert's husband, whom she had named as her executor in the will, and her son David, who had witnessed the will, were both already deceased.

In August of 2003, Mrs. Hebert's granddaughter, Kathleen, petitioned the court for appointment as the administrator of Mrs. Hebert's estate, asserting that Mrs. Hebert had died intestate. Kathleen and her mother, Willa, then moved onto the lot designated in the will for Shawn's son, Shayd. Shawn, who occupied the lot left to him in the will, opposed the appointment of his cousin, Kathleen, and he attempted unsuccessfully to probate a copy of the will. Trial testimony indicates that Shawn's dad, David, had bought the property in Mrs. Hebert's name, but Willa claims to have made some of the payments. Shawn and his Aunt Willa apparently agreed to each continue living on the lots they occupied, but they did not complete a formal settlement or obtain judgments of possession.

In 2011, Shawn's mother found the original of the will in a closet, and Shawn produced it for probate. Kathleen and Willa opposed the probate of the will. Following a contradictory hearing at which evidence and testimony were introduced, the trial court entered a judgment finding the will valid in favor of Shawn and replacing Kathleen with Shawn as administrator of the estate. We affirm the judgment of the trial court.

III.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In a will contest case, the factual findings of the trial court are accorded great weight and will not be disturbed on appeal absent a finding of manifest error. *Succession of Daigle*, 601 So.2d 10 (La.App. 3 Cir. 1992).

IV.

## LAW AND DISCUSSION

Willa and Kathleen contend that the trial court erred in finding the will of the deceased, Mrs. Hebert, a valid will, and in removing Kathleen as administratrix of the estate. Their arguments revolve around alleged defects in the will's compliance with the formalities prescribed in the applicable statutes.

Currently, there are two forms of testaments in Louisiana. La.Civ.Code art. 1574. The *olographic* will is handwritten, dated, and signed by the testator. La.Civ.Code art. 1575. The *notarial* will is executed with more formalities and is witnessed and notarized. *See* La.Civ.Code arts. 1577-1580.1. Prior to the July 1999 effective date of the notarial will of La.Civ.Code art. 1577, which did not change the law, the March 1999 will of Mrs. Hebert was called a statutory will and was governed by the first two sections of La.R.S. 9:2442.[1]

---

[1]The substance of the statutory will of La.R.S. 9:2442(A)-(B) is reproduced in La.Civ.Code art. 1577:

§ 2442. Statutory will; form; witnesses

    A. A statutory will may be executed under this Section only by a person who knows how to sign his name and knows how to and is physically able to read.
    B. The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
    (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.
    (2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has signed this will at the end and on each other separate page, and has declared or signified in our presence that it is his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of _____, 19__."

Art. 1577. Requirements of form

    The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:

    (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
    (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

The formalities for each kind of will must be observed, or the testament is null and void. La.Civ.Code art. 1573.[2] However, the law recognizes a presumption in favor of the validity of testaments in general, and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. *Succession of Daigle*, 601 So.2d 10. In Louisiana, the statutory will is not founded on civilian law but rather on statutory wills which are found in all common-law states and which have as their original source the English Statute of Frauds of 1677. *Succession of Morgan*, 257 La. 380, 242 So.2d 551 (La.1970). In adopting the statutory form of will, the legislature's purpose was to evade the strict standards of form required of civil law testaments. *Succession of Melancon*, 330 So.2d 679 (La.App. 3 Cir. 1976).

The purpose of prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception, to afford a means of determining the will's authenticity, and to prevent substitution of some other writing in its place. *Howard v. Gunter*, 215 So.2d 222 (La.App. 3 Cir. 1968). The statutory will is valid as long as it is in *substantial compliance* with the requirements of the statute designed to protect against fraud and to ensure that the testament is an accurate reflection of the testator's wishes. *Successions of Eddy*, 95-730 (La.App. 3 Cir. 12/6/95), 664 So.2d 853.

Here, as previously stated, the will executed on March 24, 1999, was governed by La.R.S. 9:2442. Willa and Kathleen assert that the will is invalid for non-observance of the requisite formalities, and they assign seven errors which fall under R.S. 9:2442(B)(1) and (B)(2).

Specifically, they argue that the trial court erred in validating Mrs. Hebert's will because the will: (1) lacks an express statement that the testamentary

---

[2]Louisiana Civil Code article 1573 was formerly La.Civ.Code art. 1595, which has been repealed.

4

declaration was made in the presence of the notary; (2) lacks an express statement that the will was signed by the testatrix in the presence of the notary; (3) lacks an express statement that the notary signed in the presence of the witnesses and the testatrix; (4) lacks a single express declaration that the testatrix, the witnesses, and the notary all signed in the presence of each other; (5) contains a basic notarial certification in place of a statutory attestation; (6) lacks a signature on the page containing the dispositive provisions; and, (7) lacks a date in the witness attestation clause.

### *La.R.S. 9:2442(B)(1)*

Issues one (1), two (2), and six (6) relate to requirements of the testator under La.R.S. 9:2442(B)(1). The first two issues have no merit because (B)(1) does not require an "express statement" that the testamentary declaration was made in the presence of the notary. Nor does (B)(1) require an "express statement" that the will was signed by the testator in the presence of the notary. Rather, La.R.S. 9:2442(B)(1) states:

> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.

Hence, (B)(1) requires that the testator *be* in the presence of the notary and two witnesses *and declare or signify to them that the instrument is her last will*. It also requires that the testator sign the will at the end and on each page in their presence. Stated another way, (B)(1) requires the testatrix to *do* certain things, not to "expressly state" that she is doing certain things. In this case, Mrs. Hebert's will itself, and the trial testimony, show that the criteria of (B)(1) are met.

5

Mrs. Hebert's will consists of two typed pages. The first page bears the title, "LAST WILL AND TESTAMENT." Mrs. Hebert declares in the opening paragraph:

> I, GLADYS KNOTT HEBERT, ([social security number]), a resident of St. Martin Parish, State of Louisiana, and being of sound mind and memory, and not acting under duress, menace, fraud or undue influence, do make, and declare this to be my LAST WILL AND TESTAMENT.

Therefore, Mrs. Hebert did make her statutory declaration, pursuant to La.R.S. 9:2442(B)(1), in the opening paragraph of her will. She then signed her initials in two places on page one, as "*G.K.H.*," and she signed her name at the end of the will on page two, as "*Gladys K. Hebert.*" Underneath her signature, page two contains the witness attestation clause signed by two witnesses, as discussed more fully below; and last it contains the notary attestation clause, signed and dated by the notary, Mr. August Dupuis.

Mr. Dupuis testified that he drafted the will for Mrs. Hebert based upon meetings and telephone conversations with her; that on March 24, 1999, he went to the restaurant of Willa Dean Huval and read the will aloud to Mrs. Hebert and the two witnesses, Willa and her brother, David; and, that they all signed the will, along with himself as notary, in the presence of each other. Thus, Mr. Dupuis' testimony indicates that the requirements of La.R.S. 9:2442(B)(1) are met by Mrs. Hebert's declaration and signing in the presence of the notary and two witnesses. Willa, on the other hand, admitted at trial that she signed the will, but she denied her mother's presence, her mother's signature, and the presence of the notary. The resolution of conflicts in testimony and credibility determinations in succession proceedings are within the province of the trial court. *Succession of Fletcher*, 94-1426 (La.App. 3 Cir. 4/5/95), 653 So.2d 119, *writ denied*, 95-1105 (La. 6/16/95), 655 So.2d 338. The trial court found that the statutory requirements

6

were met. We find no manifest error. *See Succession of Thibodeaux*, 527 So.2d 559 (La.App. 3 Cir.), *writ denied*, 532 So.2d 151 (La.1988) (evidence supported the determination that the testator signed the will in the presence of the witness, despite the contrary testimony of the witness, which was contrary to attestations made in the will and to the testimony of other witnesses).

The appellants further argue that Mrs. Hebert's initials on page one were not sufficient because a full signature is required with the dispositive provisions of the will. This argument is without merit. Comment (b) to La.Civ.Code art. 1577, which reproduces the substance of R.S. 9:2442 (*see* article 1577, Comment (a)), without changing the law, states in pertinent part (emphasis added):

> (b) *The testator need not sign after both the dispositive or appointive provisions* of this testament *and the declaration*, although the validity of the document is not affected by such a "double" signature. The testator is disposing of property, appointing an executor or making other directions in the body of the testament itself. *He need only sign at the end of the dispositive, appointive **or** directive provisions.*

In this case, Mrs. Hebert signed her name at the end of the numbered provisions, which were dispositive, appointive, and directive, *and* she signed her initials immediately next to the two dispositive provisions. More specifically, the body of Mrs. Hebert's will has four numbered provisions. The first and second provisions are on page one and are dispositive, as they dispose of two separate parcels of land. Mrs. Hebert signed her initials, "*G.K.H*," in large, cursive letters next to each dispositive provision on page one.[3] The third and fourth provisions

---

[3]The four provisions are presented in blocked, indented text; they are labeled "FIRST" through "FO[U]RTH." The two dispositive provisions on page one contain lengthy legal descriptions of two lots in the Oak Leaf Subdivision in St. Martin Parish. In the first blocked paragraph, Mrs. Hebert bequeaths lot nine (9) of the subdivision to her grandson, David Shawn Hebert. In the second blocked paragraph, Mrs. Hebert bequeaths lot eight (8) to her great grandson, Shade [sic] Hebert.

are very brief and appear at the top of page two. They are appointive and directive, as the third appoints Mrs. Hebert's husband, who subsequently pre-deceased her, as executor of her will; and the fourth directs that she is revoking all former wills and codicils.

Immediately below the fourth provision on page two, Mrs. Hebert signed and dated her will, in the following manner:

> IN WITNESS WHEREOF, I Gladys Knott Hebert set my signature this *24th* day of *March*, 1999.
>
> *Gladys K. Hebert*
> Gladys Knott Hebert
> Testator

Accordingly, while Mrs. Hebert did not sign at the end of the declaration in the opening paragraph on page one, she did sign at the end of the four provisions, which were dispositive, appointive, and directive, and which ended on page two, thus complying with La.R.S. 9:2442(B)(1).

As for the dispositive provisions on page one, the notary, Mr. Dupuis, testified at trial that Mrs. Hebert signed her initials next to each of these dispositive provisions after he read each one aloud at the signing of the will. The will itself indicates that the signature on the second page was written by the same hand as the initials on the first page. The trial court found this sufficient. We agree. As shown by the Comments to La.Civ.Code art. 1577, which substantively replaced La.R.S. 9:2442(A) and (B), the testator is not required to sign immediately after the dispositive clause.

In *Succession of Squires*, 93-1589 (La.App. 3 Cir. 6/1/94), 640 So.2d 813, *writ denied*, 94-1660 (La. 9/16/94), 642 So.2d 199, we found the will valid where the testator placed only his initials on the first page of the will, in spite of the statute's requirement that the instrument be signed on each page. We discussed

*Succession of Guezuraga*, 512 So.2d 366 (La.1987), wherein the Louisiana Supreme Court stated:

> But we are not required to give the statutory will a strict interpretation. The Legislature adopted the statutory will from the common law in order to avoid the rigid formal requirements of the Louisiana Civil Code. "The minimal formal requirements of the statutory will are only designed to provide a simplified means for a testator to express his testamentary intent and to assure, through his signification and his signing in the presence of a notary and two witnesses, that the instrument was intended to be his last will." *Succession of Porche v. Mouch*, 288 So.2d 27, 30 (La.1973). In accordance with this legislative intent, courts liberally construe and apply the statute, maintaining the validity of the will if at all possible, as long as it is in *substantial compliance* with the statute.

*Succession of Guezuraga*, 512 So.2d at 368 (emphasis added).

In *Succession of Armstrong*, 93-2385 (La.App. 4 Cir. 4/28/94), 636 So.2d 1109, *writ denied*, 94-1370 (La. 9/16/94), 642 So.2d 196, the Fourth Circuit Court of Appeal also found a will valid where the testator placed only his initials on the bottom of page one of the will, as opposed to a more formal signature. There, the court stated: "There is little formality required for signatures which come in all shapes and sizes and often are illegible. Furthermore, a person may use more than one form of signature." *Id*. at 1111. We agree with our brethren of the fourth circuit. *See also Succession of Marcello*, 532 So.2d 230 (La.App. 3 Cir. 1988) (will, which was two pages long, was not rendered invalid by the testator's failure to sign immediately following the dispositive provisions of the will).

Here, the entire context of the will, and the evidence regarding the signing, indicates that Mrs. Hebert intended to bequeath the lots described in her will to her grandson and her great grandson. *See Succession of Barry*, 250 La. 435, 196 So.2d 265 (La.1967). The trial court considered the will itself and the

testimony at trial and found the will valid.  We find that the will is a valid will under La.R.S. 9:2442(B)(1).

### *La.R.S. 9:2442(B)(2)*

Willa and Kathleen's remaining issues pertain to the requirements of the witnesses and the notary under La.R.S. 9:2442(B)(2).  They contend that the will:  (1) lacks an express statement that the notary signed in the presence of the witnesses and the testatrix; (2) lacks a single express declaration that the testatrix, the witnesses, and the notary all signed in the presence of each other; (3) contains a basic notarial certification in place of a statutory attestation; and, (4) lacks a date in the witness attestation clause.

The language of La.R.S. 9:2442(B)(2), containing what is often referred to as the witness attestation clause, states:

> (2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has signed this will at the end and on each other separate page, and has declared or signified in our presence that it is his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of _____, 19__."

Here, below Mrs. Hebert's dated attestation and signature, as described above, the will contains the following two attestations:

> The foregoing instrument, consisting of two pages was *at the date hereof*, by Gladys Knott Hebert, *signed* and published as, *and declared to be her Last Will and Testament in the presence of us*, who at her request and *in her presents [sic] and in the presence of each other*, have signed our names as witnesses hereto.
>
> *David W. Hebert*
>
> *Willie Dean H. Huval*
> Witnesses

10

The foregoing instrument was *read and witnessed before me, the undersigned Notary Public*, in and for the Parish of St. Martin, State of Louisiana, *this 24ᵗʰ day of March, 1999*, in St. Martinville, Louisiana.

*August Dupuis*
Notary Public

Essentially the appellants argue that there should have been one, single, witness/notary attestation clause declaring that the witnesses and notary signed in the presence of the testator and each other, that it should have been dated, and that the notary should not have used a separate notarial certification.

We find no merit in these assertions. Section (B)(2) of R.S. 9:2442 requires that the attestation clause be "substantially similar" to the language quoted therein. Here, the witness attestation clause contains language that is substantially similar to the statute; it is incorporated by reference in the notary's attestation wherein he certifies that all was read and witnessed before him on the same date; and, his trial testimony supports the letter and the spirit of the law stated in Section (B)(2). The fact that the notary's attestation language and the witnesses' attestation language is contained in two separate clauses does not render the will invalid for nonobservance of formalities. Split attestation declarations made by the testator, the witnesses, and the notary do not invalidate the will. *Succession of Edwards*, 619 So.2d 1249 (La.App. 3 Cir.), *writ denied*, 627 So.2d 651 (La.1993).

Moreover, the omission of the *date* from the witness attestation block does not render the will invalid. In Mrs. Hebert's will, the date of March 24, 1999, appears twice on page two, both *above and below* the witnesses' attestation clause. The date is stated immediately above the witness attestation, in Mrs. Hebert's attestation of signing; and the date is repeated immediately below the witness attestation, in the notary's attestation clause. Moreover, the date of March 24,

11

1999, is incorporated by reference as "the date hereof" in the witness attestation clause itself, which is sandwiched between the two dated clauses.

Comment (g) of La.Civ.Code art. 1577 states:

> (g) This Article requires that the testament be dated but intentionally does not specify where the date must appear, nor does it require that the dating be executed in the presence of the notary and witnesses or that the dating be made by the testator. It is common practice to have a typewritten testament that is already dated, and that testament should be upheld if it is valid in all other respects. The first paragraph of the Article states that "the . . . testament shall be prepared in writing and shall be dated", and the subsequent language (with reference to execution) intentionally contains no language that refers to the dating having been executed in the presence of the witnesses or the notary. Nor is there any requirement that the testator be the one to date the testament. The critical function of the date is to establish a time frame so that, among other things, in the event of a conflict between two presumptively valid testaments, the later one prevails. A subsequent testament that contains a provision that revokes all prior testaments obviously revokes the earlier testament, and one primary function of the date is to establish which of the two testaments is the later one.

Here, the trial court discussed the date references and cited *Succession of Guezuraga* and *Succession of Squires*, stating, "While the attestation clause(s) may not contain the exact language and be in the exact form traditionally used, their content clearly shows compliance with law for a valid Will." We agree.

In construing the attestation clause of a statutory will, the court does not require strict, technical, and pedantic compliance in the form or in the language of the will, but examines the clause to see whether there is substantial adherence to form and whether it shows facts and circumstances which show compliance with the formal requirements for testamentary validity. *See Succession of Morgan*, 242 So.2d 551.

12

V.

## <u>CONCLUSION</u>

Based upon the foregoing, we find that the will in this case is in substantial compliance with the statutes and is in full compliance with the jurisprudence and the legislative intent.

All costs are assessed to Willa Dean Hebert Huval and Kathleen Stelly.

**AFFIRMED.**