STONE, J.
The trial court denied William Watson's petition to have the last will and testament of Rosie Lee Watson declared invalid for failure to meet the requirements of La. C.C. art. 1578. William Watson now appeals. For the following reasons, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Rosie Lee Watson ("the decedent") died testate on February 26, 2016. Her will was admitted to probate on June 15, 2016, and a judgment of possession was rendered on the same date. On March 30, 2017, the decedent's son, William Watson ("Watson") filed a petition to have the will, dated January 28, 2011, annulled. Watson argued the will was not valid under Louisiana law because it did not contain the sufficient attestation clause as required by La. C.C. art. 1578 (" Article 1578"). The hearing on Watson's petition was held on July 31, 2017. At the hearing, Watson opted to not present any evidence, but instead elected to rest on the pleadings and the will itself. Thereafter, the trial court determined the decedent's testament was valid because it met the requirements of La. C.C. art. 1577 (" Article 1577"). The trial court rendered a final judgment denying Watson's petition. Watson now appeals.
DISCUSSION
The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573. The purpose of prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception, to afford a means of determining the will's authenticity, and to prevent substitution of some other writing in its place. Succession of Roussel , 373 So.2d 155, 158 (La. 1979).
Article 1577 provides:
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _________, ___."
In order for a notarial testament to be valid as to form, (1) the testator must declare in the presence of a notary and two witnesses that the instrument is his testament, (2) the testator must sign his *870 name at the end of the testament and on each separate page, and (3) the notary and two witnesses must sign a declaration in the presence of each other and the testator attesting that the formalities of Article 1577 have been followed. Succession of Dawson, 51,005 (La. App. 2 Cir. 11/16/16), 210 So.3d 421, 424-25.
For a valid notarial will, there must be an attestation clause or clause of declaration. However, its form is not sacrosanct. Successions of Toney , 2016-1534 (La. 5/3/17), 226 So.3d 397, 409 ; Succession of Morgan , 257 La. 380, 242 So.2d 551, 552 (La. 1970) ; Succession of Dawson , supra at 425. The attestation clause may use the form suggested in the statute or use language substantially similar thereto. The attestation clause is designed to demonstrate that the facts and circumstances of the execution of the instrument conform to the statutory requirements. Successions of Toney, supra at 409-10 ; Succession of Morgan, supra ; Succession of Dawson, supra . Courts liberally construe and apply the provisions of Article 1577, maintaining the validity of the will if at all possible, as long as the will is in substantial compliance with the statute. In re Succession of Holbrook, 2013-1181 (La. 1/28/14), 144 So.3d 845, 851 ; Succession of Dawson, supra .
Article 1578 provides:
When a testator knows how to sign his name and to read, and is physically able to read but unable to sign his name because of a physical infirmity, the procedure for execution of a notarial testament is as follows:
(1) In the presence of the notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament, that he is able to see and read but unable to sign because of a physical infirmity, and shall affix his mark where his signature would otherwise be required; and if he is unable to affix his mark he may direct another person to assist him in affixing a mark, or to sign his name in his place. The other person may be one of the witnesses or the notary.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this is his testament, and that he is able to see and read and knows how to sign his name but is unable to do so because of a physical infirmity; and in our presence he has affixed, or caused to be affixed, his mark or name at the end of the testament and on each other separate page, and in the presence of the testator and each other, we have subscribed our names this _____day of ____, _____."
In his first assignment of error, Watson argues the trial court erred in failing to find the will was absolutely null as a matter of law. The first page of the decedent's will stated that she wished to take advantage of the provisions of Article 1578, which allows an individual who can read and write to make a mark when physical infirmity prevents her from signing her name to a will. Specifically, Watson claims the will is absolutely null because the attestation clause did not include the language that the decedent "declared or signified that this is [her] testament, and that [she] is able to see and read and knows how to sign [her] name but is unable to do so because of a physical infirmity."
Under Louisiana law, there is a presumption in favor of the validity of testaments and evidence of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. In re Succession of Holbrook, supra at 853 ;
*871 Succession of Dawson, supra at 423. In construing the attestation clause of a notarial will, the court does not require strict, technical, and pedantic compliance in the form or in the language of the will, but examines the clause to see whether there is substantial adherence to form and whether it shows facts and circumstances which show compliance with the formal requirements for testamentary validity. Succession of Morgan, supra at 553 ; In re Succession of Hebert , 2012-281 (La. App. 3 Cir. 10/3/12), 101 So.3d 131, 140.
We find that though the attestation clause in the decedent's will does not contain the declaration found in Article 1578, the will is valid because it substantially complied with the requirements of Article 1577. At the end and on each separate page of the will, the decedent fully signed her name. The decedent certified in the first attestation clause that she signed her name at the end and on each separate page and declared the instrument to be her testament in the presence of the notary and two witnesses. In the second attestation clause, the notary and witnesses certified that in their presence the decedent signed her name at the end and on each separate page and declared the instrument to be her testament. As such, it was unnecessary for the decedent to take advantage of the provisions of Article 1578, and any reference in the will to Article 1578 was an error by the drafter of the will. We do not find the error to be significant or material as to render the instrument absolutely null.
Having filed his claim to annul more than three months after probate of the will, Watson had the burden of proving the invalidity of the will. La. C.C.P. art. 2932 ; Succession of Harvey, 573 So.2d 1304 (La. App. 2 Cir. 1991). Watson chose to introduce neither evidence nor witnesses, despite there being witnesses present during the hearing. The trial court gave Watson ample opportunities to present witnesses and evidence, to which Watson repeatedly declined. However, Watson did cite Succession of Maquar, Jr. , 2003-0041 (La. App 4 Cir. 6/4/03), 849 So.2d 773, writ denied 2003-1873 (La. 11/21/03), 860 So.2d 544 to support of his argument that the will is invalid.
In Maquar , the Fourth Circuit Court of Appeal held that the testator, who was physically unable to sign his name, but allegedly could see and read, was required to declare before, or signify to, a notary and witnesses that he could see and read. We find this case to be in stark contrast from the matter sub judice in that Marquar could not sign his own name and instead signed with an "X." Therefore, he was required to comply with the attestation requirements of Article 1578. Here, the decedent could sign her full name, and in fact, did. We find Watson failed to meet his burden of proof, the will is valid pursuant to Article 1577, and the trial court did not err in denying Watson's petition.
Next, Watson argues the trial court erred in searching for new interpretations of statutes that are clear and unambiguous. We find there is no indication in the record that the trial court took any such action. This assignment lacks merit.
Watson next contends the trial court erred in "changing" his argument from the failure to comply with proper notarial form to an "unrelated and unexplained" burden of proving the lack of testamentary capacity. Watson complains he should not have been required to present evidence to prove the decedent could not sign her name because the improper form of the will was a question of law, not fact. As previously stated, pursuant to La. C. C. P. art. 2932, Watson had the burden of proof in this case since he instituted the action to annul the will more than three months after it *872 had been probated. As shown by the transcript of the hearing, the trial court gave Watson ample opportunities to call witnesses and introduce evidence, which Watson declined. The trial court did not err in requiring that Watson present evidence to satisfy his burden. This assignment lacks merit.
Watson also asserts the district court erred in using repealed statutes and/or outdated case law to judicially alter his cause of action and burden of proof. Again, there is no indication of any such conduct in the record. All applicable laws were current and adequately applied. This assignment lacks merit.
Watson argues the trial court erred by hearing Appellee's motion for summary judgment without proof in the record that he had received the required statutory notice. Notably, there was never a motion for summary judgment filed in this case; Watson simply believed Appellee's exception of no cause of action was mistitled. Appellees were only provided with the address listed on Watson's filings, and the record indicates Appellees mailed every pleading and letter to that address. Moreover, the trial court gave Watson time to review any documents he claimed to have not received and even gave Watson the option for a continuance, which he declined. This assignment lacks merit.
Watson alleges the trial court erred by allowing the Appellee's allegations to overrule, replace, or alter the desires of the decedent. We find the record does not support Watson's allegation and we find the trial court did not err in its application of the law to the decedent's will.
Finally, Watson contends the trial court erred in refusing to answer his request for findings of fact and conclusions of law. The trial court did not respond to Watson's request, stating that it had already given a very detailed ruling in open court when Watson was present. The trial court did however give Watson the option to obtain a copy of the transcript at his expense, if he wished to review the reasons. We therefore find this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court judgment denying Watson's petition to have the decedent's last will and testament declared invalid is affirmed. Costs of this appeal are assessed to Watson.
AFFIRMED.